## Nolan *et al. versus* Sweeny.

1. Land was sold to Timothy Sweeny—there being a father and son of that name—and Bartholomew, another son; Nolan went into possession under a written agreement, which was lost, signed "Timothy Sweeny," "Bartholomew Sweeny," to support their father for life. The father died, and afterwards Nolan died, having devised the land to his wife. In ejectment by Timothy, the son, against the wife, he alleged that he was one of the original vendors and that the agreement was that Nolan was to have it for the father's life only ; the wife alleged that the father was the original vendee, that he executed the agreement, and by it Nolan was to have the land absolutely. Under objection—no exception being sealed—the plaintiff was allowed to testify that he was the vendee and what was the agreement with Nolan. *Held*, that he was estopped from objecting to the competency of the wife, who was offered as a witness for the defence.

2. The writ was for a tract of land, describing the adjoiners on the north, east, south and west, containing 100 acres more or less ; the verdict was for " plaintiff for 20 acres on the lower or south end of the tract." *Held*, that the verdict was void for uncertainty.

3. No partition having been made between Timothy and Bartholomew, the verdict should not have been for land in severalty, but for an undivided interest.

4. Miller *v.* Casselberry, 11 Wright 377, recognised.

November 15th 1875.   Before Agnew, C. J., Sharswood, Williams, Mercur, Gordon, Paxson and Woodward, JJ.

Error to the Court of Common Pleas of *Butler county :* Of October and November Term 1875, No. 55.

This was an action of ejectment, brought April 24th 1872, by Timothy Sweeny, against Eleanor Nolan and Timothy Nolan, for a tract of land " in Fairview township * * * bounded on the north by John Moore, on the east by David McCullough, on the south by Miles Sweeny and others, and on the west by widow Seibert, containing 100 acres more or less."

The case was tried June 13th 1874, before McGuffin, P. J.

The plaintiff and defendant, Eleanor Nolan, are children of Timothy Sweeny, the elder, deceased.   Eleanor Nolan is the widow of John Nolan ; Timothy Nolan, the other defendant, is the son of John and Eleanor Nolan.   It appeared to be assumed that the defendants were devisees of John Nolan of the land in controversy.

Both parties claimed under Archibald McCall, who, on the 15th of August 1838, sold 139 acres 52 perches of land (of which the land in dispute is part or the whole), by articles of agreement, to Timothy Sweeny and Bartholomew Sweeny, payable in instalments, the last being payable June 15th 1840.   Bartholomew Sweeny was a son of Timothy Sweeny, the elder.   The articles of agreement were lost, but the substance of them, as above stated, was not a matter of contest.

The main contest in the case was, whether Timothy Sweeny, the vendee in the articles, was the plaintiff or his father.

[Nolan *v.* Sweeny.]

The plaintiff alleged that he and his brother Bartholomew had made an agreement in writing with John Nolan, which had been drawn and witnessed by one William Hope, and which was lost, by which Nolan was to keep the father for life, and in consideration, Nolan was to have the land in dispute during the father's life.

The defendants alleged that the vendee, Timothy Sweeny, was the father; and that he and his son Bartholomew, by agreement in writing with John Nolan, made September 23d 1842, "in consideration of the maintenance of Timothy Sweeny, for and during his natural life," granted the land to "the said John Nolan, his executors, administrators and assigns for ever."

Archibald McCall died in 1843, Timothy Sweeny, the father, died in 1859, and John Nolan died in 1860.

The plaintiff testified that he bought the land from McCall; that he and Bartholomew went on it to live; that his father lived with them; they built a log-house, and plaintiff cleared some land, but Bartholomew did not; the clearing was on the south side of the tract; he left the place, his father being in possession; he then gave Nolan possession; the arrangement with Nolan to maintain his father was in writing drawn by William Hope; it was left with him; plaintiff never saw it since.

The plaintiff testified as to his efforts to obtain the agreement and his inability to procure it. He was then asked to testify what were the contents of the agreement. The defendant objected to the plaintiff so testifying, because he was incompetent to testify, as Nolan was dead. The court admitted the plaintiff to testify.

The record showed that the court afterwards, when the bill of exceptions of the whole record was finally made up, declined to seal a bill of exceptions to the admission of this testimony.

Plaintiff testified that the arrangement with Nolan was to keep the father.

Hope testified that he drew the agreement in 1841 or 1842; it was signed by plaintiff, Bartholomew and Nolan; he signed it as a witness; it was left with him; had it in his possession a long time; he had often looked for it; did not know what had become of it; it was not then in his possession; it was not acknowledged; that by the agreement Nolan was to have the use of 100 acres of the land which had been purchased from McCall for the maintenance of their father; "the land was given to John Nolan by the agreement during lifetime of old Mr. Sweeny." There was evidence that Bartholomew Sweeny was dead.

The plaintiff gave other evidence in support of his case.

The defendants gave in evidence from the records in the office of the recorder of deeds, an agreement signed by "Timothy Sweeny" and Bartholomew Sweeny, dated, and containing as set out in the above statement of the case.

[Nolan *v.* Sweeny.]

The record showed that the agreement was witnessed by " William Hope," proved by his affidavit, taken before a justice of the peace of Crawford county, September 21st 1843, and recorded January 30th 1844.

The defendants then proposed to ask Eleanor Nolan (one of them) whether she was present when the agreement referred to by Hope was written and signed; whether she heard it read, or was made acquainted with its contents by the parties; what they were, and who were the parties to the agreement.

The offer was objected to, that Mrs. Nolan was incompetent, because she was the widow of John Nolan, and his devisee of the land in dispute and claimed as such.

The court rejected the offer and sealed a bill of exceptions.

There was other testimony on the part of the defendants in answer to the plaintiff's case.

For the plaintiff, in rebuttal, William Hope testified that he had never written, witnessed or proved the agreement, the record of which had been given in evidence by the defendants.

The foregoing will sufficiently present the case for an understanding of the questions decided by the Supreme Court.

The verdict was "for plaintiff, Timothy Sweeny, for 20 acres on the lower or south end of the tract. "

The court entered judgment on the verdict.

The defendants took a writ of error; they assigned for error:—

1. Rejecting Eleanor Nolan as a witness.

7. Entering judgment on the verdict.

*Bredin, Thompson & Scott,* for plaintiff in error, as to rejection of Mrs. Nolan as a witness, referred to Act of April 15th 1869, sect. 1, Pamph. L. 30, 1 Br. Purd. 624, pl. 16; Karns *v.* Tanner, 16 P. F. Smith 305. As to the uncertainty of the verdict, they cited Miller *v.* Casselberry, 11 Wright 377.

*L. L. Mitchell,* for defendant in error.—Nolan was the assignee of plaintiff and his brother of " the 'thing in action.' " Nolan being dead, his wife was, therefore, incompetent: Act of April 15th 1869; Karns *v.* Tanner, *supra.* By the description in the precipe and verdict, the land found for the plaintiff could be set off: Tryon *v.* Carlin, 5 Watts 371.

Mr. Justice PAXSON delivered the opinion of the court, November 26th 1875.

Whatever view we may take of the competency of Eleanor Nolan as a witness under the Act of 15th of April 1869, it was clear error to reject her evidence after admitting the plaintiff, Timothy Sweeny, to testify. The theory of the plaintiff was that he and his brother Bartholomew had given the use of the land to John

[Nolan *v.* Sweeny.]

Nolan during the lifetime of their father, in consideration of Nolan's taking care of and keeping the latter. The theory of the defence was, that the agreement was made between Nolan, Bartholomew Sweeny and Timothy Sweeny, the elder, and that the gift of the land was absolute. It was therefore a vital point in the cause whether it was the plaintiff or his father who had entered into the agreement. It was equally important to ascertain what the agreement really was. John Nolan was dead and could not speak. The plaintiff was permitted to testify under objection to the fact of Nolan's death; that the plaintiff was *the* Timothy Sweeny who had made the agreement with Nolan; and that plaintiff and his brother Bartholomew had given the *use* of the land to John Nolan for keeping their father. The plaintiff having thus been admitted to this extent in regard to the transaction with the dead man, he was estopped from objecting to Eleanor Nolan as a witness. As the record stands we cannot pass upon the propriety of the admission of the plaintiff's testimony, as the learned judge of the court below declined to seal a bill as to that. We will therefore decide only what is before us—that it was error to exclude Eleanor Nolan after having permitted the plaintiff to testify. The witnesses stand upon an equality.

Aside from this question the judgment must be reversed upon the seventh assignment of error. The verdict is uncertain and is incapable of being reduced to certainty. The plaintiff brought his ejectment for the whole tract, and the verdict was "for twenty acres on the lower or south end of the tract." How and where is the line to run? Had there been any such reference to monuments on the ground, to recorded deeds, to diagrams filed of record, to warrants of survey, or identified agreements, as was said in Miller *v.* Casselberry, 11 Wright 377, the verdict might have been reduced to a certainty. But it lacked all these essential elements and should therefore have been set aside.

Another objection is that the verdict is for so much land in severalty; there had never been a partition of this property between Timothy Sweeny and his brother Bartholomew or his heirs; the verdict should have been for an undivided interest.

Judgment reversed, and a *venire facias de novo* awarded.